UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

May 1, 2013

LETTER TO COUNSEL:

RE:   *Shawn Michael Napier v. Michael J. Astrue, Commissioner, Social Security Administration*;
      Civil No. TJS-12-1096

Dear Counsel:

This matter is before me by the parties' consent. (ECF Nos. 3, 7). On April 11, 2012, Plaintiff Shawn Michael Napier ("Mr. Napier") petitioned this Court to review the Social Security Administration's final decision to deny his claim for Supplemental Security Income ("SSI"). (ECF No. 1). I have considered Mr. Napier's Motion for Summary Judgment (ECF No. 14) and the Commissioner's Motion for Summary Judgment (ECF No. 15). I find that no hearing is necessary. Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). For the reasons that follow, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

Mr. Napier applied for SSI on September 10, 2008, alleging disability commencing March 18, 2008. (Tr. 179-185). Mr. Napier's claims were denied initially on December 15, 2008, and upon reconsideration on April 14, 2009. (Tr. 68, 69). A hearing was held on March 9, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 25-66). Following the hearing, on June 24, 2011, the ALJ determined that Mr. Napier was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 10-24). On February 13, 2012, the Appeals Council denied Mr. Napier's request for further review of the ALJ's decision. (Tr. 1-3). The ALJ's decision dated June 24, 2011 constitutes the final, reviewable decision of the agency.

The ALJ evaluated Mr. Napier's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. At step one, the ALJ found that Mr. Napier was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since September 10, 2008, when he applied for SSI. (Tr. 15). At step two, the ALJ found that Mr. Napier suffered from the severe impairments of "hernia status post successful surgical repair," obesity, major depressive disorder, post-traumatic stress disorder, and substance abuse (alcohol and marijuana) in recent remission. (Tr. 15). The ALJ also found that Mr. Napier suffered from several non-severe impairments, including elevated liver enzymes, and occasional pain from stab wounds to the head, arm and side that he suffered in 2006. (Tr. 15). At step three, the ALJ found that Mr. Napier's impairments, separately and in combination, failed to

meet or equal in severity any listed impairment. (Tr. 15-16).

The ALJ then determined that, despite Mr. Napier's severe impairments, he retained the residual functional capacity ("RFC") to:

> Perform medium work as defined in 20 CFR 416.967(c) except that he is further limited to: carrying out simple tasks in 2-hour increments (which can be accommodated by regularly scheduled breaks); having occasional interaction with coworkers, supervisors, and the general public; and adapting to simple changes in a routine work setting.

(Tr. 16).

At step four, the ALJ determined that Mr. Napier is unable to perform any past relevant work. (Tr. 19). At step five, however, the ALJ determined that considering Mr. Napier's "age, education, work experience and residual functional capacity, there are other jobs that exist in significant numbers that [he] can perform." (Tr. 124). As a result of this determination, the ALJ found that Mr. Napier was not disabled during the relevant time frame.

Mr. Napier presents several arguments on appeal. First, Mr. Napier contends that the ALJ failed to properly weigh and assess opinion evidence provided by treating physicians and other "treating health care providers." (ECF No. 14-1 at 3). Second, Mr. Napier argues that the ALJ failed to properly evaluate his credibility. (ECF No. 14-1 at 5). Third, Mr. Napier argues that the ALJ did not "sufficiently analyze" his mental impairments. (ECF No. 14-1 at 6). Fourth, Mr. Napier argues that the ALJ's evaluation of his activities of daily living was improper. (ECF No. 14-1 at 10). Mr. Napier's fifth argument is that the ALJ's hypothetical questions to a vocational expert were improper, because they did not properly set forth all of Mr. Napier's limitations. (ECF No. 14-1 at 10). I will address each of these arguments in turn.

First, Mr. Napier argues that the ALJ failed to properly weigh the opinions of his treating physicians and the opinions of other treating sources. The opinion of a treating physician is entitled to controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques and 2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590; see also 20 C.F.R. § 416.927(c). [1] Federal regulations require an ALJ to assess a number of factors when considering what weight to assign to the medical opinions presented. 20 C.F.R. § 416.927(c). While treating source opinions on issues reserved to the Commissioner, such as determining a claimant's RFC, are not entitled to controlling weight, the ALJ must still evaluate all of the evidence in the case record to determine the extent to which the physician's opinion is supported by the record as a whole. *Id*. These factors include: (1) the examining relationship between the physician and the claimant; (2) the treatment relationship between the physician and the claimant; (3) the extent to which a medical opinion is supported by relevant evidence; (4) the consistency of a medical opinion with the

---

[1] Effective March 26, 2012, the Commissioner's regulations concerning medical opinions were revised, but without substantive change.

2

record as a whole; and, (5) whether the physician's opinion relates to an area in which they are a specialist. *Id*.

While the ALJ must generally give more weight to a treating physician's opinion, *see* 20 C.F.R. § 416.927(c), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(c)(2). Specifically, an ALJ may attribute little weight to a treating source opinion when it is unsupported, inconsistent with other evidence in the record, or based on a short term treating relationship. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence[.]") The ALJ is also not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 416.927(d); SSR 96–5p, 1996 WL 374183. Pursuant to 20 C.F.R. § 416.927(e)(2)(ii), the ALJ is required to "explain in the decision the weight given to . . . any opinions from treating sources, nonteaching sources, and other non-examining sources who do not work for [the Social Security Administration]."

In addition to the opinions of "acceptable medical sources," *see* 20 C.F.R. § 416.913(a) (defining "acceptable medical sources"), an ALJ is also required to consider opinions from "other sources," such as nurse-practitioners, physicians' assistants, and therapists. 20 C.F.R. § 416.913(d). These opinions, however, are not to be afforded controlling weight, and should be evaluated in consideration of a number of factors:

> How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source presents relevant evidence to support an opinion; How well the source explains the opinion; Whether the source has a specialty or area of expertise related to the individual's impairment(s); and Any other factors that tend to support or refute the opinion.

SSR 06-03P, 200 WL 2329939 (Aug. 9, 2006) (noting that "[n]ot every factor for weighing opinion evidence will apply in every case"). Similarly, ALJs should evaluate opinions from "non-medical sources," such as teachers, social workers, counselors and relatives, using the same factors, to the extent that they are relevant to the source. *Id*.

In this case, the ALJ appropriately considered the opinion of Mr. Napier's treating physician, Dr. Harvey Itskowitz, and properly gave the opinion little weight. (Tr. 18). Dr. Itskowitz's opinion that Mr. Napier had marked functional limitations in all areas with repeated episodes of extended decompensation is not supported by other evidence in the record. This opinion derives from a form questionnaire that Dr. Itskowitz completed, where Dr. Itskowitz circled "yes" or "no" to a number of questions submitted by Mr. Napier's attorney, and checked a number of boxes on a Medical Report Form. (Tr. 329-32, 396-98). Dr. Itskowitz did not support his answers to these questions with any explanation of medically acceptable clinical laboratory diagnostic techniques or discussion of other evidence in the record. In addition, as the ALJ noted, his answers are not even corroborated by his own treatment notes. (Tr. 18). For instance, while Dr. Itskowitz stated that Mr. Napier had marked limitations in mental functioning

(Tr. 331), his own treatment notes reflect that Mr. Napier's mental status was normal, with a sad or anxious mood. Additionally, in August 2008, Dr. Itskowitz assigned Mr. Napier a GAF score of 58.[2] (Tr. 413-50). The ALJ properly determined that Dr. Itskowitz's opinion was entitled to little weight. Mr. Napier's argument that the ALJ failed to "give sufficient reasons" for giving little weight to Dr. Itskowitz's opinion is without merit, as the ALJ adequately explained the manner in which he viewed Dr. Itskowitz's opinion as inconsistent with his own treatment notes, and as being unsupported by other objective evidence in the record. (Tr. 18).

The ALJ also appropriately considered the opinions of a number of "other sources." Paula Cornish, a licensed clinical social worker, opined that Mr. Napier had "severe, unremitting psychiatric issues that affect his ability to work." (Tr. 392). Another licensed clinical social worker, Patti Cooper, expressed her opinion that Mr. Napier had "been unable to work," and experienced marked limitations in all areas. (Tr. 393-401). The ALJ properly determined that these opinions were entitled to little weight, as they are conclusory, not supported by objective medical evidence and inconsistent with other credible evidence in the record. The ALJ's evaluation of the opinion evidence was legally proper and supported by substantial evidence.

Mr. Napier's second argument is that the ALJ failed to properly evaluate his credibility concerning the intensity, persistence, and functionally limiting effects of his symptoms. (ECF No. 14-1 at 5). When an ALJ evaluates a claimant's subjective complaints, the regulations provide a two-step evaluation process. 20 C.F.R. § 416.929. First, the ALJ must determine whether the claimant has a medically determinable impairment capable of causing the symptoms alleged. *Id*. Next, the ALJ must evaluate to what extent the symptoms limit the claimant's functioning. *Id*. An ALJ's determination of a claimant's credibility must take into consideration a number of factors, in addition to other objective medical evidence. These factors include:

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has

---

[2] The Global Assessment of Functioning ("GAF") scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. *Johnson v. Astrue,* No. TMD-10-947, 2011 WL 5149574 at *2 (D. Md. Oct. 27, 2011) (citing *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Ed.). A GAF score is a

> subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). . . . A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Comm'r of Social Sec.,* 572 F.3d 272, 276 (6th Cir. 2009) (citing *Edwards v. Barnhart,* 383 F. Supp. 2d 920, 924 n.1 (E.D. Mich. 2005)).

4

received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-79, 1996 WL 374186. An ALJ's findings regarding a claimant's credibility are entitled to great weight. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.")

Here, the ALJ determined that Mr. Napier's testimony about his symptoms was "not entirely credible to the extent that [it is] inconsistent with" the RFC determination. (Tr. 17). The ALJ supported her credibility determination with a discussion of evidence that indicated that Mr. Napier's hernia had resolved in 2011, that he had consistently reported only minimal psychiatric complaints, that his condition had generally improved with treatment and medication, and that he had regularly attended and participated in group counseling sessions since October 2010. (Tr. 17-18). This evidence is inconsistent with Mr. Napier's testimony as to the severity of his limitations. The ALJ's evaluation of Mr. Napier's credibility was proper, and her credibility determination is supported by substantial evidence.

Third, Mr. Napier argues that the ALJ did not properly evaluate his "psychiatric symptoms," and should have found that he "met a psychiatric listing." (ECF No. 14-1 at 6). Chiefly, Mr. Napier contends that the ALJ failed to follow the steps outlined in 20 C.F.R. § 416.920a to evaluate his mental impairments.[3] (ECF No. 14-1 at 7).

Where a claimant alleges a mental impairment, the ALJ must follow a "special technique" outlined in 20 C.F.R. § 416.920a. The first step of this technique requires the ALJ to evaluate a claimant's "pertinent symptoms, signs and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment. 20 C.F.R. § 416.920a(b). Next, the ALJ must rate the degree of the claimant's functional limitations based on the "extent to which [the] impairment(s) interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id*. at (c)(2). The ALJ must then rate the claimant's degree of limitation in (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* at (c)(3). For the first three areas, a claimant's limitations may be rated as "[n]one, mild, moderate, marked, [or] extreme." *Id*. To rate a claimant's degree of limitation with respect to episodes of decompensation, the ALJ uses a four-point scale, and rates the limitation as "[n]one, one or two, three, [or] four or more." *Id*. at (c)(4). Once the ALJ has rated the claimant's functional limitations, the ALJ must determine whether the mental impairment meets, or is equivalent to, a listed mental disorder. *Id*. at (d)(2); 20 C.F.R., Pt. 404, Subpt. P, App. 1 ("Listing of Impairments"). If the ALJ determines that the claimant's mental impairment does not meet, or is not equivalent to, a mental disorder in any Listing, the ALJ will then assess the claimant's RFC.

---

[3] Mr. Napier does not specify what the ALJ failed to do, and instead relies on the text of the regulations to form the basis of his argument.

*Id*. at (d)(3).

In this case, the ALJ properly followed the special technique to evaluate Mr. Napier's mental impairments, and concluded that Mr. Napier had severe medically determinable impairments, but that those impairments did not meet a Listing. (Tr. 15-16). The ALJ's analysis of Mr. Napier's functional limitations, which is thoroughly set forth in her opinion, is supported by substantial evidence. Mr. Napier provides no legal or factual basis for his argument, and it is without merit.

Fourth, Mr. Napier argues that the ALJ improperly evaluated his ability to perform daily activities. Mr. Napier's Memorandum in Support of his Motion for Summary Judgment does not specify how the ALJ failed in this regard. (ECF No. 14-1 at 10). The ALJ determined that Mr. Napier "has no more than mild restriction" in activities of daily living. (Tr. 16). In support of this conclusion, the ALJ cited to Mr. Napier's ability to "meet his personal care needs and . . . to regularly attend substance abuse counseling since October 2010." (Tr. 16, 377). This finding is supported by substantial evidence.

Finally, Mr. Napier argues that the ALJ's hypothetical questions to the vocational expert were improper because they did not properly set forth all of Mr. Napier's limitations. (ECF No. 14-1 at 10). The Commissioner employs vocational experts to offer evidence as to whether a claimant possesses the residual functional capacity to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. § 416.960(b)-(c). The vocational expert may respond to a hypothetical question about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. § 416.960(b)(2). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted). An ALJ is not required to use the services of a vocational expert, and may exercise his or her discretion to determine whether such services are necessary in a given case. 20 C.F.R. § 416.966(e) ("[W]e may use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist."); *see also* SSR 83-14, 1983 WL 31254, at *4 (1983) ("The publications listed in sections 404.1566 and 416.966 of the regulations will be sufficient for relatively simple issues.")

In this case, the ALJ did not use the services of a vocational expert. Instead, the ALJ determined that, in accordance with the Dictionary of Occupational Titles, there is work that exists in the national economy that Mr. Napier can perform, in light of his RFC. (Tr. 20). Because the ALJ did not call a vocational expert to testify, let alone direct any hypothetical questions to a vocational expert, Mr. Napier's argument necessarily fails.

For the reasons set forth herein, Mr. Napier's Motion for Summary Judgment (ECF No. 14) will be DENIED, and the Commissioner's Motion for Summary Judgment (ECF No. 15) will

be GRANTED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion.  An implementing Order follows.

Sincerely yours,

/s/
Timothy J. Sullivan
United States Magistrate Judge